## MILNER v. THE STATE.

1. "Whether subsequent confessions, of themselves wholly unexceptionable, were made under previous influences still operating on the mind, is a question not of law for the court but of fact for the jury." *Pines* v. *State*, 21 *Ga.* 227.

2. In order for the admission of illegal evidence to constitute a sufficient ground for a new trial, the motion should show that the illegal evidence was objected to when offered, and the specific objection thus made must also be set forth.

3. A ground of a motion alleging that the verdict is contrary to a specified part of the charge of the court will be construed to mean that the verdict is contrary to law.

4. There was sufficient evidence to authorize the verdict.

Submitted October 18,—Decided November 9, 1905.

Indictment for murder. Before Judge Reagan. Spalding superior court. August 28, 1905.

*Robert T. Daniel, Lucien P. Goodrich,* and *David J. Bailey,* for plaintiff in error, cited 2 Stark. Ev. (6th Am. ed.) 27; Whart. Cr. L. (6th ed.) 489, 694; 1 Gr. Ev. (16th ed.) 361; 6 Am. & Eng. Enc. L. (2d ed.) 542; 53 L. R. A. 402; 118 *Ga.* 807; 121 *Ga.* 615.

*John C. Hart, attorney-general,* and *O. H. B. Bloodworth, solicitor-general,* contra, cited *Ga. R.* 21/227; 87/622; 91/278; 92/32; 93/208; 122/564.

BECK, J. Ralph Milner was tried on an indictment for murder, and convicted. The State proved the corpus delicti by several witnesses, and proved a confession of the defendant by one witness, the sheriff of the county, and also by another witness, one Terrell, that the defendant in his statement on a preliminary trial circumstantially and positively admitted and confessed the crime with which he was charged. In the incriminating statement upon the preliminary trial the defendant averred that when he killed the deceased, one Rufe Farley, who at the time was armed with a gun, commanded him to do the act, saying, "Damn you, you have got to kill him, and if you don't I will kill you;" that when the deceased approached the place near which the killing occurred he said to the defendant, "Hello, Ralph, have you found anything to kill?" to which the defendant replied, "No, sir, I haven't found anything;" that he then joined the deceased and walked along with him; that Farley came over to where they were and walked "in behind" defendant with his

gun cocked; that they walked along talking to the deceased, and just before the shooting Farley said to the defendant, "Are you going to do what you said?" whereupon the defendant raised his gun and shot the deceased "without taking any sight," the gun being within about two feet of the deceased's head when he shot; and that after the deceased fell, Rufe Farley beat him with a stick and robbed him. The defendant's confession was corroborated by proof of the corpus delicti and numerous circumstances attending the commission of the crime. There was nothing to show that more than one other person besides the deceased was present at the killing. The defendant made a statement in substance as follows: "When I shot, I shot at a fish hawk. . . I told Mr. Terrell and Mr. Head that," referring to his confession, "because I thought that they were trying to get me out. How I come to believe in Mr. Terrell, he wanted to hire me again in the spring, and I thought he was trying to get me out. He told me he would get me out and wanted me to work for him, and said he would get me a lawyer." After being convicted the defendant made a motion for a new trial upon several grounds, the first three being the general grounds and the others being as follows: (4) Because "the court erred in permitting the witness Terrell to testify what the boy stated on the next day after this confession was obtained and in the presence of this witness on the preliminary trial, said witness sitting in the court room inside the bar railing. The testimony of the witness which should not have been allowed to go to the jury is as follows: 'He went on to tell about his killing Sam Jones. He said on Thursday afternoon he went down in the woods, close to where Sam was killed, and he had his gun and was hunting squirrels. He stayed a while there, sitting on a stump near where he killed old man Sam. Rufe Farley came to him about sundown, and he said that old man Sam Jones was coming down through a piece of corn from the pasture, driving a cow. He said Rufe stepped up to him, and took a cut shell out of his own gun, and put it in Ralph's gun, and taken a shell out of his pocket and put it in his own gun, and picked up a big red-oak stick, seven or eight feet long and about eight inches round, and said, "Yonder comes a man that owes me money and won't pay. Damn you, you got to kill, and if you don't, I will kill you." He said that old man Sam Jones came along the wood and said: "Hello, Ralph, have you found anything to kill?" He said, "No sir, I haven't found anything,"

and got up and walked along with him. Rufe Farley came over the upper side of the road, out on the edge of the woods, and walked in behind him with his gun cocked. He went along talking to old man Sam, and got close to where old man Sam was killed, and Rufe said to him, "Are you going to do what you said?" and Rufe had his gun cocked on him, that he raised his gun and shot him. They asked him if he took any sight, and he said he didn't, he just raised his gun, he had the gun about two feet of the old man Sam's head when he shot. As soon as he shot, old man Sam fell, and he broke and run towards his home. He said that Rufe done the beating of him with the stick, and the robbing of him, and such as that.' Defendant claims that the admission of the above testimony was error, because it was made next day after the confession was obtained from the defendant by promise of reward, and that this testimony [was] made in the presence of the same man who obtained the previous confession, and was made under the influence of the same promise and in the presence of Terrell, who obtained the first confession."

(5) "Because the court erred in admitting the pocket-book containing some money. There was no evidence that this pocket-book or money were ever in the possession of the deceased, and the admission of it by the court was error, because it injured the defendant, as evidence had been introduced that the old man had been robbed; and the jury would infer, from the court admitting this pocket-book and contents of same, that it had been the property of the deceased and had been taken from him by the defendant." Defendant further alleges error, in the sixth and seventh grounds of his motion, because the verdict was contrary to the charge of the court. Upon the overruling of his motion for a new trial he excepted.

1. After the questions raised in the first three grounds of the motion, which were the usual and general grounds, the first assignment of error is upon the admission of the alleged illegal testimony of the witness Terrell, who was permitted to testify to a statement made by the defendant upon a preliminary trial, whether of the defendant or another is not clear from the record, to the effect that he had shot and killed the deceased, but that he did so because one Rufe Farley commanded him so to do, threatening him with death if he refused. There is nothing in the record to suggest that this statement was not made freely and voluntarily and after proper

caution, save that the witness Terrell was present at the trial and sitting within the rail inclosing the bar, and because of this presence and proximity of Terrell there was a continuance of the inducement under which it was insisted that the first confession had been obtained. The court refused to exclude the evidence of the witness and permitted its introduction. The course pursued by the trial judge in permitting the testimony to go to the jury was in accordance with the repeated rulings of this court. We will presume, in the absence of any complaint to the contrary, that in its general instructions the court charged the jury to determine, from all the evidence in the record, the circumstances under which the statement containing the confession was made, whether or not the same was freely and voluntarily made, as well as to determine whether the influence under which the previous confession was improperly obtained was still operating on the mind of the accused; and that if they should find that the statement was not freely and voluntarily made or that the mind of the accused was still affected by previously exerted influences of an improper character, they should not consider or give any weight whatever to the alleged confession. We are not unaware that there are many and very respectable authorities to the contrary. "When once a confession under improper influence is obtained, the presumption arises that a subsequent confession of the same nature flows from the like influence, and this though the subsequent confession was made to a different person from the one holding out the inducement." 6 Am. & Eng. Enc. L. (2d ed.) 542, and numerous citations supporting the text. But in the case at bar we apply the rule of our own court, and without reluctance, especially as it is evident from the record that the first confession obtained—which was excluded by the trial court in its evident but commendable determination to protect the rights of the accused—was itself made under such circumstances that if they aroused hope in the breast of the defendant it must have been hope springing from "seed of his own planting," and this is not the hope that excludes a confession though made under its influence. "The hope that excludes is that, and that only, which some other person kindles or excites. Some inducement must be held out by another person, tending, according to human nature and the law of human motives, either to overpower the will or seduce it, either to coerce through fear, or persuade through hope." *Bohanan* v.

*State,* 92 *Ga.* 32.  Under no circumstances would we relax the just and salutary rule that excludes confessions made or obtained under the influence of hope or fear, but, on the other hand, confessions freely and voluntarily made are evidence that should be submitted to the jury, who, under proper instruction and admonition from the court, can be trusted to give them their proper weight.  And in this case they were duly admonished to reject the confessions if they were not freely and voluntarily made.  The trial judge upon this point instructed the jury in the following appropriate language: "If you believe that Terrell held out any inducement to the defendant, or did or said anything that caused him to entertain a hope of benefit, no matter how slight, then if he afterwards made a confession to other parties, if you believe that hope aroused in his mind by Terrell, if there was any such hope aroused by any action of Mr. Terrell, if you believe that that hope was still bearing in his mind at the time he made any other confessions, if he made any other confessions, on the idea and acting upon any hope that may have been held out to this defendant by the witness, Mr. Terrell, although the confession has gone in the evidence, it is not to be considered in this case."  There was ample evidence in corroboration of the direct confession made by the defendant, including such significant circumstances as blood upon the defendant's gun and on his knife, as well as tracks, indicating that they were made by his shoes, which led from the place of the murder to his home.  A careful consideration of all the evidence and the defendant's brief and incoherent statement would convince any mind that he is guilty of the wicked and shocking crime ascribed to him.

2. The next ground of the motion, the fifth, raises the question of the admissibility in evidence of a certain pocket-book and its contents, but this question is raised here for the first time, and as it is not alleged what objection was urged when it was offered in evidence in the court below or that any objection was there made, it is presumed that none was made, and "reasons why certain evidence should not have been admitted can not be considered in this court unless they appear to have been urged before the trial judge and at the proper time."  *Grace* v. *McKinney,* 112 *Ga.* 425.

3. No other errors of law are complained of.  The evidence authorized the verdict.

*Judgment affirmed.    All the Justices concur.*